Royal DL Bond, Esq. SBN: 346254
**BOND LAW LEGAL GROUP**
30141 Antelope Rd. D228
Menifee, CA 92584
1(844) 476-9254| 1(844) 464-0904
royal@bondlawlegal.com

Attorney for Plaintiff KEIRON HELMS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| KEIRON HELMS, an individual,<br><br><br><br>Plaintiff,<br><br>vs.<br><br><br>STATE OF CALIFORNIA; COUNTY OF RIVERSIDE; CITY OF HEMET; HEMET POLICE DEPARTMENT; HOBBS; and DOES 1-10, inclusive,<br><br>Defendant(s). | **CASE NO:**<br><br>**VERIFIED CIVIL COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**<br><br>**[Pursuant to 42 U.S.C. §1983]**<br><br>**JURY TRIAL DEMANDED** |

**COMES NOW** Plaintiff KEIRON HELMS, by and through his Attorney, Royal DL Bond, Esq., and for his Complaint against the above-named DEFENDANTS, alleges:

## JURISDICTION AND VENUE

1.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 (Federal Questions) and 1343(a)(3) because the controversy arises under the U.S. Constitution, 1343(c) (Civil Rights).

2.  This is an action to redress the deprivation under color of statute, ordinance, regulation, custom or usage of rights, privileges and immunities secured to Plaintiff by the Constitution and laws of the United States. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, as well as, this Court has authority to award attorney's fees pursuant to 42 U.S.C. § 1988.

3.  The State law claims for relief are within the supplemental jurisdiction of this Court, pursuant to 28 U.S.C.§1367 – because all these issues arise from a common nucleus of operative facts and/or the same transaction or occurrence.

4.  Venue is proper in this district in accordance with 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims happened in this District.

5.  Declaratory relief is authorized by 28 U.S.C. § 2201. A declaration of law is necessary to determine the rights and duties of the parties. Plaintiff also seeks monetary damages (special, compensatory, and punitive) against DEFENDANTS, as well as, further relief as the Court deems just and proper.


## THE PARTIES

6.  Plaintiff Keiron Helms ("PLAINTIFF"), a natural person of mature age, is a private individual within the meaning of California law and is a citizen of the United States, and at all times relevant hereto a resident of the state of California.

7.  Defendant STATE OF CALIFORNIA ("STATE"), is a state that has 482 incorporated cities and towns, and all times relevant to this matter, the STATE employed the California Highway Patrol Officers, BYSTANDER OFFICERS, and at all times mentioned in this Complaint.  As the employer for the BYSTANDER OFFICERS, the STATE is responsible for the BYSTANDER OFFICERS' liability in

this case.  The STATE is being sued in its official capacity.

8.  Defendant RIVERSIDE COUNTY ("COUNTY"), is a county located in the southern portion of the State of California.  At all times relevant to this matter, the COUNTY employed the Riverside County Sheriff Deputies, the BYSTANDER OFFICERS, and at all times mentioned in this Complaint. As the employer for the BYSTANDER OFFICERS, the COUNTY is responsible for the BYSTANDER OFFICERS' liability in this case.  The COUNTY is being sued in its official capacity.

9.  Defendant CITY of HEMET ("CITY"), is a city in the San Jacinto Valley in Riverside County, of the State of California.  At all times relevant to this matter, HEMET PD is a public entity of the CITY, which employed HOBBS and the other HEMET PD officer, BYSTANDER OFFICER, and at all times mentioned in this Complaint. As the employer for HOBBS and the other HEMET PD officer, BYSTANDER OFFICER, the CITY is responsible for HEMET PD, HOBBS and the other BYSTANDER OFFICER's liability in this case.  The CITY is being sued in its official capacity.

10. Defendant HEMET POLICE DEPARTMENT ("HEMET PD"), provides law enforcement services to the City of Hemet in Southern California and is located in the San Jacinto Valley area of Riverside County.  At all times relevant to this matter, HEMET PD employed HOBBS and the other HEMET PD officer, BYSTANDER OFFICER, and at all times mentioned in this Complaint. As the employer for HOBBS and the other HEMET PD officer, BYSTANDER OFFICER, HEMET PD is responsible for HOBBS and the other BYSTANDER OFFICER's liability in this case.  HEMET PD is being sued in its official capacity.

11. Defendant HOBBS ("HOBBS"), is a law enforcement officer, providing services to the City of Hemet in Southern California, located in the San Jacinto Valley area of Riverside County.  At all times relevant to this matter, HOBBS is employed by HEMET PD and at all times mentioned in this Complaint.  HOBBS is being sued in its official and individual capacities.

12. Defendant DOES 1 through 7 (collectively, "BYSTANDER OFFICERS") were, at all times pertinent and relevant to this action, employed for the STATE, CITY, and COUNTY and at all times mentioned herein, acted in the course and scope of their employment and under color of law. BYSTANDER OFFICERS are sued in their official and individual capacities.

13. DEFENDANTS were, at all times relevant, acting under the color of state law in their capacities stated above, and their acts or omissions were conducted within the scope of their individual or official duties.

14. Defendants STATE, COUNTY, CITY, and HEMET PD are responsible for the hiring, training, supervision, discipline, administration, policies, customs, practices, operations, management and control of its public entities and employees, HOBBS and BYSTANDER OFFICERS.  As such, the STATE, COUNTY, CITY, HEMET PD were the final policy maker for the HOBBS and BYSTANDER OFFICERS in the areas of law enforcement training, supervision, and discipline of police officers and deputies.

15. PLAINTIFF is informed, believes, and thereupon alleges that each of the individual DEFENDANTS' acts were known to, discovered by, approved by, and/or ratified the STATE, COUNTY, CITY, by and through their policy makers, decision makers, officials, officers, and/or supervisors. and applicable DOE Defendants.

16. PLAINTIFF is informed, believes, and thereupon alleges that officials, supervisors, policy makers, and other individuals with the authority to set or modify municipal and/or departmental policy, de jure or de facto, of the STATE, COUNTY, CITY, HEMET PD and DOE Defendants, participated in, approved of, ratified, and/or failed to prevent the acts by all DEFENDANTS and DOE Defendants of which PLAINTIFF complain herein.

17. Each and all of the things done by each DEFENDANT against PLAINTIFF, as mentioned in this entire Complaint, were done, partially if not entirely, because of PLAINTIFF's race. In doing each and all of the things mentioned herein, or neglecting or intentionally failing to rectify said misconduct, each and all DEFENDANTS were

acting pursuant to a de facto policy and within the scope of such agency, employment, and conspiracy and with full permission, knowledge, approval, ratification, and support of each other.

18. PLAINTIFF is informed, believes, and thereupon alleges that at all times mentioned herein, each of the DEFENDANTS, including officials, supervisors, watch commanders, and other policy makers of the STATE, COUNTY, CITY, HEMET PD was the agent, employee, or co-conspirator of one another, some, or all of their Co-DEFENDANTS have been, the officers, agents, employers, employees, partners, joint venturers, coconspirators, representatives, surrogates, and assigns of one another, and in doing the acts, omissions and maintaining the conditions, described herein.

19. DEFENDANTS, and each of them, separately and in concert, have been and are acting under color of state law. PLAINTIFF is informed, believes, and thereupon alleges that each of the DEFENDANTS, acting individually and/or in concert with each other, engaged in a common plan to wrongfully deprive PLAINTIFF of his respective rights to freedom, security in person and effects, freedom from excessive force, freedom from unreasonable searches and seizures, and due process of law, among others described herein.  Each DEFENDANT is being sued in either their individual and/or official capacity.

20. All DEFENDANTS throughout this Complaint may be referred to collectively as "DEFENDANTS" which term shall be used to mean DEFENDANTS and each of them, unless otherwise specified.

21. If PLAINTIFF is currently ignorant of any true names and capacities, whether individual, corporate, associates or otherwise, of any unnamed DEFENDANT(s) to be rightfully sued herein, PLAINTIFF will seek leave to amend this complaint to allege their true names and capacities when ascertained – per FRCP 15(c) (Relation Back of Amendments).

## STATEMENT OF FACTS

22. This Complaint arises from PLAINTIFF being shot by a HEMET PD officer, HOBBS, unjustifiably, and physically attacked, after coming to a stop on March 1, 2023.

23. March 1, 2023, HEMET PD was called due to domestic violence, an argument between PLAINTIFF and his wife, while at a friend's residence.  Before HEMET PD officers arrived, PLAINTIFF's wife busted out PLAINTIFF's car windshield and he decided to leave.  As PLAINTIFF was driving away, HEMET PD officers were approaching the friend's residence.  HEMET PD officers commenced to driving fast in an effort to catch up with PLAINTIFF on the road.

24. As PLAINTIFF was driving, he was on his phone, on speaker with his mother, explaining to her the incident between he and his wife, and he noticed that the HEMET PD officers were approaching him quickly.  PLAINTIFF told his mother that the police were chasing him.  Instinctively, PLAINTIFF became afraid for his life, not wanting to become another police-involved black male death-statistic, and he began driving faster, an apparent unarmed black man; a chase ensued of a nondangerous citizen.

25. PLAINTIFF came to a stop and HOBBS told PLAINTIFF to put his hands up; PLAINTIFF's mother told him to keep his hands up.

26. As PLAINTIFF's hands were up and out the window for about 1-2 minutes, PLAINTIFF began hearing shots.  Without saying anything, without giving any commands, HOBBS began shooting PLAINTIFF.  PLAINTIFF realized he was shot, after 3-4 shots.

27. Immediately after the shooting stopped and while PLAINTIFF was bleeding, HOBBS snatched PLAINTIFF out his car and slammed him on the ground. PLAINTIFF was in excruciating neck, arm, and leg pain.  HOBBS snatched PLAINTIFF's prescription glasses off his face and broke them; snatched PLAINTIFF's bandage off his neck, where PLAINTIFF had Barostim implant surgery, ripping out PLAINTIFF's stitches from the lower part of his neck. Barostim implant regulates

blood flow in people with heart failure; an innovative device uses the body's own reflexes to improve cardiovascular function.

28. In addition, HOBBS cut PLAINTIFF's clothes off to see whether PLAINTIFF was shot and after looking, he stated that PLAINTIFF was not shot.  Thereafter, HOBBS snatched PLAINTIFF up from the ground, handcuffed PLAINTIFF with his hands behind his back; even though, PLAINTIFF informed HOBBS that he could not put his hands behind his back.

29. While PLAINTIFF was outside of his vehicle on the ground, he saw about 7-8 BYSTANDER OFFICERS watching the police assault, comprised of the California Highway Patrol, Riverside County Sheriff's Department, and HEMET PD, who ignored the assault upon PLAINTIFF and appeared to be socializing amongst each other while the violation against PLAINTIFF was occurring.

30. The BYSTANDER OFFICERS were standing close enough to PLAINTIFF to be able to see and hear everything that was happening. They witnessed HOBBS ignore PLAINTIFF's pleas for help and they did not intervene to protect PLAINTIFF from HOBBS's excessive force.  At no point during the arrest was PLAINTIFF informed of the charges against him or read his rights.

31. Finally, after the excessive force, PLAINTIFF was put in the police vehicle and taken to the HEMET PD station.  In severe pain, PLAINTIFF was directed by HOBBS and forced to wait in the police vehicle for roughly ten (10) minutes without medical attention, while handcuffed behind his back and while HOBBS and the other HEMET PD officer went inside the HEMET PD station.

32. Upon returning to the police vehicle, HOBBS and the other HEMET PD officer took PLAINTIFF to the hospital.  The health care provider checked PLAINTIFF's heart and not his wounds.  The health care provider's examination was based on the police officers' report of PLAINTIFF's medical need.  The Hemel police officers reported that PLAINTIFF needed to be examined for his heart condition.  Subsequently, PLAINTIFF was taken back to the HEMET PD station, where he was subjected to more assault.

33. March 1, 2023, the same day of PLAINTIFF's arrest, Martin Alfaro ("Alfaro"), Master Investigator, Central Homicide Unit of Riverside County Sheriff's Department, visited the HEMET PD station, to interview PLAINTIFF regarding the police officer shooting and to determine whether the shooting was justified.  Upon Alfaro's arrival, he requested that the police officers give PLAINTIFF clothing.  The police officers gave PLAINTIFF a paper suit that PLAINTIFF was unable to wear, because it was too small.

34. PLAINTIFF stayed at the HEMET PD station all night without clothing and bare feet, only wearing underwear, while handcuffed and bleeding. PLAINTIFF ultimately had a seizure while jailed and the police officers watched without requesting medical care.

35. The next morning, two (2) women, HEMET PD officers took PLAINTIFF to the Smith Correctional Facility ("Smith Facility"), without clothing and shoes on his feet.

36. Finally, upon being incarcerated at the Smith Facility, PLAINTIFF's wounds were examined and treated.  As a result of the shooting, PLAINTIFF's arm was grazed by a bullet and his lower left leg was shot, which apparently passed through without hitting major blood vessels or bone, because surgery was not necessary; although, disfigured.

37. August 3, 2023, while still incarcerated at the Smith Facility for the alleged domestic violence, Alfaro visited Plaintiff again for a second interview. The interviews pertained to obtaining information to determine whether HOBBS shooting PLAINTIFF was justified; the shooting was determined not to be justified.

38. During the interviews, PLAINTIFF was told by Alfaro that HOBBS was under investigation for other shootings and still on active duty.  Alfaro told PLAINTIFF that the other shootings appear to be racially intended, because all the shootings were either black and/or minorities.

39. Further, while PLAINTIFF was incarcerated at the Smith Facility, charged with assault upon his wife, which was later reduced, HOBBS again was being charged for assault against a girl/woman.  PLAINTIFF and HOBBS were being arraigned the same

day in the same court, and present at the same time.  PLAINTIFF's lawyer informed him that she could no longer represent him, because she was now representing HOBBS and there was a conflict.

40. HOBBS and the BYSTANDER OFFICERS who failed to intervene should be held jointly and severally liable for the use of excessive force on PLAINTIFF. So too should the CITY be held liable for failing to train, supervise and discipline its officers in their use of excessive force.

41. After being released from the Smith Facility and while being at home, PLAINTIFF is being harassed by the HEMET PD; pulled over for no reasonable cause and damage to his truck.

42. **Lack of Discipline**

**First**, HEMET PD, controlled by the CITY has a pattern of failing to discipline officers for using excessive force, amounting to a de facto custom.

43. **Lack of Training and Supervision**

**Second**, HEMET PD completely failed to train and supervise its officers on how to comply with their clear constitutional duty not to use excessive force when they engage a nondangerous citizen.  **Third**, HOBBS has a history of numerous complaints related to unjustified assaults on citizens.  This pattern of HOBBS' violations would have made plainly obvious the need for training officers on how to avoid excessive force during a routine police procedure.

44. HEMET PD, which employed HOBBS and one of the other BYSTANDER OFFICERS, is a public entity within the CITY.  The CITY is responsible for the conduct that resulted to PLAINTIFF's injuries.

45. The California Highway Patrol Officers, which employed BYSTANDER OFFICERS, is a public entity within the State of California.  The STATE is also responsible for the conduct that resulted in PLAINTIFF's injuries.

46. The Riverside County Sheriff's Department, which employed BYSTANDER OFFICERS, is a public entity within the county of Riverside. The COUNTY is also responsible for the conduct that resulted in PLAINTIFF's injuries.

47. Defendants STATE, COUNTY, CITY, and HEMET PD, which employed all the BYSTANDER OFFICERS and HOBBS, are municipalities and a public entity, which are all responsible for the conduct that resulted in PLAINTIFF's injuries.

## VICARIOUS LIABILITY UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR

48. PLAINTIFF incorporates by reference each and every allegation contained in all the paragraphs above.

49. The STATE, COUNTY, CITY, and HEMET PD are vicariously liable under the doctrine of respondeat superior. (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 207 [285 Cal.Rptr. 99, 814 P.2d 1341].)

50. The STATE, COUNTY, CITY, and HEMET PD hired HOBBS the BYSTANDER OFFICERS; therefore, are held vicariously liable for their misconduct.

51. HOBBS' excessive force upon PLAINTIFF was being inflicted without a legitimate goal or justification and the BYSTANDER OFFICERS stood and watched in violation of PLAINTIFF's Constitutional Rights.

52. For the doctrine of respondeat superior to apply, the plaintiff must prove that the employee's tortious conduct was committed within the scope of employment. (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 721 [159 Cal.Rptr. 835, 602 P.2d 755].) "A risk arises out of the employment when 'in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one "that may fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by the employer. [Citation.]' " (*Perez v. Van Groningen & Sons,*

*Inc., supra,* 41 Cal.3d at p. 968, citing *Rodgers v. Kemper Constr. Co., supra,* 50 Cal.App.3d at p. 619, brackets in original.)

53. The doctrine of respondeat superior applies to public and private employers alike. As stated in subdivision (a) of Government Code section 815.2 (all further statutory references are to the Government Code): "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." By this language, the Legislature incorporated "general standards of tort liability as the primary basis for respondeat superior liability of public entities. ..." (Van Alstyne, *op. cit. supra,* § 2.32, at p. 77.) Courts have construed the term "scope of employment" in section 815.2 as broadly as in private tort litigation. (Van Alstyne, *op. cit. supra,* § 2.32, at p. 79; see generally, *John R. v. Oakland Unified School Dist., supra,* 48 Cal.3d at p. 447.) B. *California Decisions Discussing Public Employer Liability for Sexually Assaultive Conduct by Police.*

54. Tortious conduct that violates an employee's official duties or disregards the employer's express orders may nonetheless be within the scope of employment. (*Perez v. Van Groningen & Sons, Inc., supra,* 41 Cal.3d at p. 969; *Meyer v. Blackman* (1963) 59 Cal.2d 668, 679 [31 Cal.Rptr. 36, 381 P.2d 916]; Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.22, p. 62.) So may acts that do not benefit the employer (*Perez, supra,* 41 Cal.3d at p. 969), or are willful or malicious in nature (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 447 [256 Cal.Rptr. 766, 769 P.2d 948]; *Martinez v. Hagopian* (1986) 182 Cal.App.3d 1223, 1227 [227 Cal.Rptr. 763]).

55. DEFENDANTS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

56. As a direct and proximate result of DEFENDANTS and the BYSTANDER OFFICERS' conduct, PLAINTIFF has suffered and continues to suffer substantial past and future damages, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

57. PLAINTIFF is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

## COUNTS

## COUNT I

**MONELL CLAIM UNDER 42 U.S.C. § 1983**
**Municipal Liability for Unconstitutional Custom, Practice, or Policy**
**(Against STATE, COUNTY, CITY, and HEMET PD)**

58. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

59. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  (West v. Atkins (1988) 487 U.S. 42, 48 [108 S.Ct. 2250, 101 L.Ed.2d 40].)

60. "[A]ny person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress. . . ."  (Monell v. New York City Dept. of Social Services (1978) 436 U.S. 658, 691–692 [98 S.Ct. 2018, 56 L.Ed.2d 611].)

61. The elements of a Monell claim are: (1) deprivation of a federal right; (2) some governmental action can be traced to the deprivation, i.e., policy or custom; (3) policy or custom demonstrating the governmental entity's fault, i.e., deliberate indifference; and (4) municipal action that was the moving force behind the federal violation. Dean v. Wexford Health Service, Inc., 18 F.4th 214, 235 (7th Cir. 2021).

62. The inadequacy of DEFENDANTS' police training is the basis for the deliberate and conscious indifference to the rights, safety, and welfare of PLAINTIFF, in total violation of PLAINTIFF's Constitutional Rights.  DEFENDANTS' unlawful misconduct demonstrates a municipal "policy" or "custom", which is the moving force behind the Constitutional violations, as follow:

63. As PLAINTIFF was driving away, leaving his friend's residence, he noticed HEMET PD officers quickly approaching him.  PLAINTIFF came to a stop and HOBBS told PLAINTIFF to put his hands up.

64. As PLAINTIFF's hands were up and out the window for about 1-2 minutes, PLAINTIFF began hearing shots.  Without saying anything, without giving any commands, HOBBS began shooting PLAINTIFF.  PLAINTIFF realized he was shot, after 3-4 shots.

65. Immediately after the shooting, HOBBS snatched PLAINTIFF out his car and slammed him on the ground, while PLAINTIFF was bleeding and in excruciating pain. Then, HOBBS snatched PLAINTIFF's prescription glasses off his face and broke them; snatched PLAINTIFF's bandage off his neck, where PLAINTIFF had Barostim implant surgery, ripping PLAINTIFF's stitches out of the lower part of his neck.

66. Thereafter, HOBBS cut PLAINTIFF's clothes off to see whether PLAINTIFF was shot and after looking, he stated that PLAINTIFF was not shot; HOBBS snatched PLAINTIFF up from the ground, handcuffed PLAINTIFF with his hands behind his back; even though, PLAINTIFF informed HOBBS that he could not put his hands behind his back.

67. While PLAINTIFF was outside of his vehicle on the ground, he saw about 7-8 BYSTANDER OFFICERS watching the police assault, comprised of California Highway Patrol officers, Riverside County Sheriff's Department officers, and HEMET PD, all who ignored the assault upon PLAINTIFF and appeared to be socializing amongst each other while the violation against PLAINTIFF was occurring.

68. The BYSTANDER OFFICERS were standing close enough to PLAINTIFF to be able to see and hear everything that was happening. They witnessed HOBBS ignore PLAINTIFF's pleas for help and they did not intervene to protect PLAINTIFF from HOBBS's excessive force.  At no point during the arrest was PLAINTIFF informed of the charges against him or read his rights.

69. After the excessive force, PLAINTIFF was put in the police vehicle and taken to HEMET PD.  In severe pain, PLAINTIFF was directed by HOBBS and forced to wait in the police vehicle for roughly ten (10) minutes without medical attention, while handcuffed behind his back and while HOBBS and the other HEMET PD officer went inside the HEMET PD station.  Upon returning to the police vehicle, HOBBS and the other HEMET PD officer took PLAINTIFF to the hospital.  The health care provider checked PLAINTIFF's heart and not his wounds.  The health care provider's examination was based on the police officers' report of PLAINTIFF's medical need.  The HEMET PD officers reported that PLAINTIFF needed to be examined for his heart condition.  Subsequently, PLAINTIFF was taken back to the HEMET PD station, where he suffered more assault.

70. March 1, 2023, upon Alfaro's arrival, Riverside County Sheriff's Department's Investigator, he requested that the police officers give PLAINTIFF clothing.  The police officers gave PLAINTIFF a paper suit that PLAINTIFF was unable to wear, because it was too small.

71. PLAINTIFF stayed at the HEMET PD station all night without clothing and bare feet, only wearing underwear, while handcuffed and bleeding. PLAINTIFF ultimately

had a seizure while jailed and the police officers watched without requesting medical care.

72. The next morning, two (2) women, HEMET PD officers took PLAINTIFF to the Smith Correctional Facility ("Smith Facility"), without clothing and shoes on his feet.

73. Finally, upon being incarcerated at the Smith Facility, PLAINTIFF's wounds were examined and treated. As a result of the shooting, PLAINTIFF's arm was grazed by a bullet and his lower left leg was shot; no surgery necessary; although, disfigured.

74. August 3, 2023, while still incarcerated at the Smith Facility for the alleged domestic violence, Alfaro visited Plaintiff again for a second interview. During the interviews, PLAINTIFF was told by Alfaro that HOBBS was under investigation for other shootings and still on active duty. Alfaro told PLAINTIFF that the other shootings appear to be racially intended, because all the shootings were either black and/or minorities.

75. All DEFENDANTS should be held liable for failing to train, supervise, and discipline its officers in their use of excessive force.

76. **Failure to Train**

PLAINTIFF Failure to Train claim demonstrates that he was deprived of his Civil Rights as a result of the STATE, COUNTY, CITY, and HEMET PD's failure to train their employees. To establish this claim, PLAINTIFF must prove all of the following: (1) that STATE, COUNTY, CITY, and HEMET PD's training program was not adequate to train its officers; (2) that STATE, COUNTY, CITY, and HEMET PD knew because of a pattern of similar violations or it should have been obvious to it that the inadequate training program was likely to result in a deprivation of the PLAINTIFF's Civil Rights; (3) that STATE, COUNTY, CITY, and HEMET PD violated PLAINTIFF's Civil Rights; and (4) that the failure to provide adequate training was the cause of the deprivation of PLAINTIFF's Civil Rights.

77. Failure to train reflects deliberate indifference to the Constitutional Rights of its inhabitants." 489 U.S. at 392. Supervisory liability can attach when the "'failure to train

amounts to deliberate indifference to the rights of persons with whom subordinates come into contact and the failure has actually caused the injury of which the plaintiff complains." Id. at 1397, quoting in part *Popham v. City of Talladega*, 908 F.2d 1561, 1564-65 (11th Cir. 1990).

78. **Failure to Supervise**

A failure to supervise exists when (1) the employee is either unfit or incompetent to perform the work for which he or she was hired, (2) the Defendant knew or should have known that the employee was unfit or incompetent and that it created a particular risk of harm to others, (3) the employee's unfitness or incompetence caused Plaintiff harm, and (4) the Defendant's negligence in supervising the employees was a substantial factor in causing the Plaintiff harm.

69. *Failing to Train and Supervise*:  HEMET PD completely failed to train and supervise its officers on how to comply with their clear constitutional duty not to use excessive force when they engage a nondangerous citizen.

70. HOBBS has a history of numerous complaints related to unjustified shootings and assaults on citizens.  This pattern of HOBBS' violations would have made plainly obvious the need for training officers on how to avoid excessive force during a routine police procedure.

71. The California Highway Patrol, which employed BYSTANDER OFFICERS, is a public entity within the State of California.  The STATE is also responsible for the conduct that resulted in PLAINTIFF's injuries.

72. The Riverside County Sheriff's Department, which employed BYSTANDER OFFICERS, is a public entity within the county of Riverside.  The COUNTY is also responsible for the conduct that resulted in PLAINTIFF's injuries.

73. HEMET PD, which employed HOBBS and one of the other BYSTANDER OFFICERS, is a public entity within the CITY.  The CITY is responsible for the conduct that resulted to PLAINTIFF's injuries.

74. Defendants STATE, COUNTY, CITY, and HEMET PD, which employed all the BYSTANDER OFFICERS and HOBBS, are municipalities and a public entity, which are all responsible for the conduct that resulted in PLAINTIFF's injuries.

75. **Failure to Discipline**

At all times relevant to this action, the CITY and HEMET PD had policymaking authority with respect to the disciplinary practices of HEMET PD.  HEMET PD, controlled by the CITY has a pattern of failing to discipline officers for using excessive force, amounting to a de facto custom.

76. Publicity regarding police officers' use of excessive force places the STATE, COUNTY, CITY, and HEMET PD on actual or constructive notice of the constitutional violations resulting from its de facto custom of failing to discipline officers for using excessive force.

77. The CITY and HEMET PD failed to discipline HOBBS for use of excessive force against PLAINTIFF, because immediately thereafter, HOBBS continued on active duty.

78. In this case, the CITY and HEMET PD had such actual or constructive notice, because there were other unjustified shootings by HOBBS, reported and complained about, in addition to the report written by Master Investigator Alfaro.

79. The STATE, COUNTY, CITY, and HEMET PD adopted official policies, practices and customs that provided for the failure to train, supervise, and discipline HEMET PD officers when they use excessive force.  The STATE, COUNTY, CITY, and HEMET PD accordingly acted with deliberate indifference to the clearly established rights secured to PLAINTIFF under the United States Constitution, specifically the Fourth Amendment rights to be free from unreasonable seizures and free from the use of excessive force against one's person.

80. By engaging in acts of excessive force against PLAINTIFF that resulted in injuries to his person, HOBBS acted with impunity because of CITY and HEMET PD's adoption of the aforementioned policies, practices and customs.

81. These policies, practices and customs were the proximate and producing cause of PLAINTIFF's injuries.

82. Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under *Monell*. See *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

83. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the STATE, CITY, and COUNTY through its policymaker (possibly other policymakers whose identities are not yet known), are liable for the harms and losses sustained by HOBBS and the BYSTANDER OFFICERS.

84. DEFENDANTS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

85. The excessive force to which PLAINTIFF was subjected to, while he cooperated with his arrest, caused him long-term physical, emotional and psychological injuries.

86. As a direct and proximate result of DEFENDANTS' customs, patterns, practices, and/or procedures, as stated herein above, PLAINTIFF's rights guaranteed to him by the Fourth and Fourteenth Amendment of the United States Constitution were violated.

87. Excessive force against PLAINTIFF, as in this case, an apparently unarmed, nondangerous citizen, may never to be used unless it is necessary to prevent the escape of a suspect and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.

88. As a direct and proximate result of DEFENDANTS' unreasonable and unlawful actions, PLAINTIFF has suffered and continues to suffer substantial past and future damages, including, but not limited to, medical bills, loss of income, severe emotional

distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

89. PLAINTIFF is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

90. In depriving PLAINTIFF of his rights under the United States Constitution, DEFENDANTS acted under color of law in its capacity as a municipal entity organized under the STATE laws, and its actions and omissions were conducted within the scope of DEFENDANTS' employees' official duties. This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

## COUNT II

**VIOLATION OF THE FOURTH AMENDMENT**
**CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983**
**Unreasonable Search and Seizure—Detention and Arrest,**
**Excessive Force, and Denial of Medical Care**
**(Against All DEFENDANTS and BYSTANDERS OFFICERS)**

91. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

92. Whenever an officer restrains the freedom of a person to walk away, he has seized that person. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).

93. The Fourth Amendment Constitutional Rights are "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

94. The Constitution, through the Fourth Amendment, protects people from unreasonable searches and seizures by the government. The Fourth Amendment, however, is not a guarantee against all searches and seizures, but only those that are deemed unreasonable under the law.

95. Apprehension of PLAINTIFF by the use of excessive force is a seizure, violating the reasonableness requirement of the Fourth Amendment Rights.

96. Notwithstanding probable cause to seize an individual, an officer may not always do so by excessive force.  The use of excessive force even to prevent the escape of a felony suspects, whatever the circumstances, is constitutionally unreasonable.

97. A police officer may arrest a person if he has probable cause to believe that person committed a crime.  *United States v. Watson*, 423 U.S. 411 (1976).  HEMET PD had no probable cause to arrest and shoot PLAINTIFF.  PLAINTIFF was stopped for a suspicious cause.

98. Once PLAINTIFF came to a stop, HOBBS quickly began shooting in violation of PLAINTIFF's Civil Rights.  An officer cannot resort to deadly force unless they "have probable cause to believe that the citizen has committed a felony and poses a threat to the safety of the officers or a danger to the community if left at large."

99. PLAINTIFF posed no threat to the HEMET PD Officers nor to the community. In addition, PLAINTIFF's rights to immediate and proper medical treatment, following HOBBS shooting PLAINTIFF in his arm and leg, are fully protected by the United States Constitution; yet, DEFENDANTS denied PLAINTIFF his rights to immediate medical care, subjecting PLAINTIFF to future mental and physical medical uncertainty.

100. The Fourth Amendment prohibits law enforcement officers from seizing a citizen without legal justification.  HEMET PD Officers arrested PLAINTIFF, transported him to the HEMET PD station, and detained him there without probable cause and without immediate medical attention. PLAINTIFF was not read his rights.  PLAINTIFF did not know why he was being held until his transfer to the Smith Facility.

101. By doing so, HOBBS violated PLAINTIFF's Fourth Amendment rights. Any reasonable police officer would have known that seizing PLAINTIFF under these circumstances would violate his Constitutional Rights.

102. PLAINTIFF continues to suffer debilitating pain and overall diminished health.

103. DEFENDANTS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

104. As a direct and proximate result of HOBB's unlawful seizure, PLAINTIFF has suffered and continues to suffer substantial past and future damages, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

105. PLAINTIFF is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

## COUNT III

**FAILURE TO INTERVENE IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION UNDER 42 U.S.C. § 1983**
**(Against All BYSTANDER OFFICERS)**

106. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

107. "The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." See *Randall v. Prince George's Cty.*, Md., 302 F.3d 188, 203 (4th Cir. 2002). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 204 (internal footnote omitted).

108. THE BYSTANDER OFFICERS were present at the scene of the violation of PLAINTIFF's Constitutional Rights. They witnessed the use of excessive force by HOBBS against PLAINTIFF. Though they had a reasonable opportunity to intervene in order to prevent or mitigate injury to PLAINTIFF, they chose not to.

109. The BYSTANDER OFFICERS failed to take any action to prevent harm to PLAINTIFF, and thereby proximately caused excessive force to be inflicted upon PLAINTIFF that resulted in a constitutionally-actionable injury.

110. The BYSTANDER OFFICERS are jointly and severally liable for PLAINTIFF's injuries.

111. Any reasonable police officer in the position of the BYSTANDER OFFICERS would have known that the force being used against PLAINTIFF was unconstitutional.

112. Any reasonable police officer in the position of the BYSTANDER OFFICERS would have known that they had a duty to take reasonable measures to prevent harm to PLAINTIFF.

113. In depriving PLAINTIFF of his rights under the United States Constitution, the BYSTANDER OFFICERS acted under color of law in their respective capacities, and their actions and omissions were conducted within the scope of their respective official duties or employment. This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

114. The BYSTANDER OFFICERS' conduct was the moving force and the proximate and producing cause of the aforementioned injuries.

115. Not only were the BYSTANDER OFFICERS deliberately indifferent to HOBBS' attack on PLAINTIFF, they stood by and socialized while the shooting and assault on PLAINTIFF took place; even after PLAINTIFF had been visibly injured and immobilized.

116. Because HOBBS' actions, and the BYSTANDER OFFICERS were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. See *Morning v. Dillon Cty.*, No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30 (1983)).

117. The BYSTANDER OFFICERS had a duty to intervene when HOBBS was violating PLAINTIFF's Constitutional Rights, which resulted in the infliction of excessive force upon PLAINTIFF.

118. The BYSTANDER OFFICERS observed and/or had reason to know that excessive force was being inflicted upon PLAINTIFF without a legitimate goal or justification.

119. The BYSTANDER OFFICERS had the opportunity and means to prevent the excessive use of force and/or violations of PLAINTIFF's constitutionally protected rights from occurring.

120. The BYSTANDER OFFICERS' conduct also resulted in psychological injury to PLAINTIFF.  Since his arrest, PLAINTIFF has experienced loss of enjoyment of life, and other non-pecuniary losses.

121. As a direct and proximate result of the BYSTANDER OFFICERS' unreasonable and unlawful actions, PLAINTIFF has suffered and continues to suffer substantial past and future damages, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

**COUNT IV**

**VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTIONAL UNDER 42 U.S.C. § 1983**
**Substantive and Procedural Due Process**
**(Against All DEFENDANTS and BYSTANDERS OFFICERS)**

122. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

123. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of

life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

124. The Due Process Clause of the Fourteenth Amendment is the source of an array of Constitutional Rights.  The Fourteenth Amendment guarantees PLAINTIFF substantive and procedural due process of the law.

125. PLAINTIFF was denied his substantive and procedural due process protections from illegal detention, unjustified excess force, and lack of immediate medical attention after being shot by the police.

126. As a direct and proximate result of the aforementioned conduct of DEFENDANTS, PLAINTIFF has suffered non-economic, psychological, and emotional damages, and PLAINTIFF was obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

127. DEFENDANTS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

128. DEFENDANTS' conduct intentionally and/or recklessly caused extreme emotional distress to the PLAINTIFF and has been intentional, reckless, malicious and oppressive, thereby entitling PLAINTIFF to recover punitive damages.


## COUNT V

**FALSE ARREST UNDER 42 U.S.C. § 1983**
**(Against All DEFENDANTS and BYSTANDERS OFFICERS)**

129. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

130. To prove a false arrest claim, a person must show that the following elements are present: (1) The police officer arrested the person; (2) The person was harmed; and (3) The officer's actions were a significant factor in causing the person's harm.

131. Other elements that may be considered in a false arrest claim include: (1) Consent: The person being arrested must not have agreed to be detained or confined, or if they did, their consent must have been given freely and not coerced; (2) Probable cause: The officer must have had probable cause that the person committed a crime before making the arrest. Without probable cause, the officer is wrongfully denying the person their constitutional right to freedom; (3) Intent to detain or confine: The defendant must have intentionally detained or confined the plaintiff; and (4) Unlawful restraint: A false arrest is an unlawful restraint of a person's freedom of movement.

132. PLAINTIFF's arrest was unlawful because there was no probable cause for the arrest. HOBBS and the other HEMET PD Officer had no reasonable basis to believe that he had violated any state law or municipal code.

133. The facts and circumstances within HOBBS and the other HEMET PD Officer's knowledge during their interaction with PLAINTIFF would not have caused a reasonable person to conclude that PLAINTIFF had committed or was in the process of committing any offense.

134. HOBBS and the other HEMET PD Officer arrested PLAINTIFF, transported him to the HEMET PD station, and detained him there without probable cause. PLAINTIFF was not read his rights.  PLAINTIFF did not know why he was being held until his transfer to the Smith Facility.

135. As a direct and proximate result of PLAINTIFF's false arrest, PLAINTIFF has suffered and continues to suffer substantial past and future damages, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

## COUNT VI

**FALSE IMPRISONMENT UNDER 42 U.S.C.§1983**
**(Against HEMET PD, HOBBS, and the BYSTANDER OFFICERS)**

136. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

137. The elements of false imprisonment include: (1) Intentional restraint: The defendant must act or omit to act with the intent to confine the victim; (2) Actual confinement: The victim must be restrained in a confined area, such as being locked in a room or handcuffed; (3) Lack of consent: The victim must not consent to the restraint; (4) Lack of legal justification: The restraint must not be justified by law; and (5) Awareness: The victim must be aware of the restraint.

138. False imprisonment can also include threats or intimidation, and it doesn't have to last for hours or days. Even a few minutes of confinement can cause emotional and physical harm.

139. PLAINTIFF was arrested, transported to the HEMET PD station, and held there without probable cause for his arrest. His detention thus was unlawful.

140. As a direct and proximate result of HOBBS and the other HEMET PD Officer's unlawful detention, PLAINTIFF has suffered and continues to suffer substantial past and future damages, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

141. HOBBS and the other HEMET PD Officer's illegal detention, stopping PLAINTIFF and continue to hold him without probable cause to arrest, while using unjustified excessive force, are fully protected by the United States Constitution.

142. PLAINTIFF continues to suffer debilitating pain and overall diminished health and mental uncertainty.

143. PLAINTIFF has suffered psychological, emotional, and non-economic damages, and PLAINTIFF was obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

144. DEFENDANTS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

## COUNT VII

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against All DEFENDANTS and the BYSTANDERS OFFICERS)**

145. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

146. A cause of action for Infliction of Emotional Distress must plead facts demonstrating (1) extreme and outrageous conduct by the Defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) Plaintiffs suffered severe or extreme emotional distress and (3) Plaintiff's injuries were actually and proximately caused by the Defendants' outrageous conduct.

147. DEFENDANTS and the BYSTANDER OFFICERS engaged in conduct described herein of their own volition, with the intention of – or reckless disregard of – the probability of causing severe or extreme emotional distress to PLAINTIFF.

148. DEFENDANTS and the BYSTANDER OFFICERS acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from their outrageous conduct.

149. HOBBS and the BYSTANDER OFFICERS' actions caused PLAINTIFF to suffer severe emotional distress as he was being shot, snatched out of his car while bleeding and thrown on the ground, stitches ripped out of his neck, *inter alia*, for no reason.

150.  The emotional distress PLAINTIFF experienced was so severe, no reasonable person could be expected to endure it.

151.  DEFENDANTS and the BYSTANDER OFFICERS' acts went beyond the bounds of acts tolerable in a civilized society, and so egregious and outrageous that they may fairly be said to shock the conscience.

152.  After PLAINTIFF came to a stop, HOBBS and the BYSTANDER OFFICERS engaged in actions that were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

153.  As a direct and proximate result of DEFENDANTS and the BYSTANDER OFFICERS' unreasonable and unlawful actions, PLAINTIFF has suffered and continues to suffer substantial past and future damages, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

154.  As a direct and proximate result of the aforementioned conduct of the DEFENDANTS and the BYSTANDER OFFICERS, PLAINTIFF was obligated to retain legal counsel and to expend or incur liability for costs of suit, attorney's fees, and related expenses.

155.  DEFENDANTS and the BYSTANDER OFFICERS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

156.  The actions of DEFENDANTS and the BYSTANDER OFFICERS against PLAINTIFF were carried out with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, thereby justifying an award of punitive damages to the fullest extent permitted by law.

## COUNT VIII

**BATTERY UNDER 42 U.S.C. § 1983**
**(Against HOBBS)**

157. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

158. 'A battery is any intentional, unlawful and harmful contact by one person with the person of another. ... A harmful contact, intentionally done is the essence of a battery. ... A contact is "unlawful" if it is unconsented to. ...' [Citation.] The elements of a civil battery are: ' "1. Defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; [¶] 2. Plaintiff did not consent to the contact; [and] [¶] 3. The harmful or offensive contact caused injury, damage, loss or harm to the plaintiff." ' [Citation.]" (*Fluharty v. Fluharty* (1997) 59 Cal.App.4th 484, 497 [69 Cal. Rptr. 2d 244].)  (*Piedra v. Dugan* (2004) 123 Cal.App.4th 1483, 1495 [21 Cal.Rptr.3d 36].)

159. Battery was committed by person(s) acting under color of state law in violation of PLAINTIFF's Fourth Amendment rights, excessive force using deadly force.

160. Immediately after HOBBS shooting PLAINTIFF, he snatched PLAINTIFF out of his vehicle and threw him on the ground, cut PLAINTIFF's clothing off him, ripped stitches out of PLAINTIFF's neck, snatched PLAINTIFF's prescription glasses off his face and broke them, snatched PLAINTIFF up from the ground and put him in the police vehicle.

161. As a direct and proximate result of HOBBS' unreasonable and unlawful actions, PLAINTIFF has suffered and continues to suffer substantial past and future damages, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

1

## COUNT IX

2

3

**CONSPIRACY TO VIOLATE CIVIL RIGHTS UNDER 42 U.S.C. §§ 1983 (Against All DEFENDANTS and BYSTANDERS OFFICERS)**

4

5

162. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

6

7

8

9

10

11

12

13

14

163. "The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design.... In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." (*Doctors' Co., supra,* 49 Cal.3d at p. 44, citing *Mox Incorporated v. Woods* (1927) 202 Cal. 675, 677-678 [262 P. 302].)  (*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 511 [28 Cal.Rptr.2d 475, 869 P.2d 454].)

15

16

17

18

164. DEFENDANTS and the BYSTANDER OFFICERS, and each of them, acted as described herein above, in conspiracy with, and with the agreement, permission, ratification, and approval of, each other to violate PLAINTIFF's Civil Rights afforded under the United States Constitution.

19

20

21

22

23

24

25

26

165. Among other things, DEFENDANTS and the BYSTANDER OFFICERS acted in conspiracy and with agreement, permission, ratification, and approval of their joint conduct to (1) unlawfully detain PLAINTIFF without probable cause or reasonable suspicion; (2) unlawfully conduct a prolonged detention of PLAINTIFF without probable cause or reasonable suspicion; (3) unlawfully search PLAINTIFF without probable cause or reasonable suspicion; (4) jointly act to use excessive force during the detention of PLAINTIFF; (5) collaborate to fabricate and advance false police reports resulting in the jailing and prosecution of PLAINTIFF.

27

28

166. DEFENDANTS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

167. As a direct and proximate result of HOBB and the BYSTANDER OFFICERS' unlawful seizure, PLAINTIFF has suffered and continues to suffer substantial past and future damages, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

168. PLAINTIFF is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

## COUNT X

**VIOLATION OF BANE ACT (Cal. Civil Code § 52.1)**
**(Against All DEFENDANTS and the BYSTANDERS OFFICERS)**

169. PLAINTIFF incorporates by reference each and every allegation contained in the above paragraphs.

170. California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion (or by the use of unconstitutionally excessive force).

171. Conduct that violates the Fourth Amendment violates the California Bane Act. HOBBS shot an unarmed man, without making any verbal commands, and who was cooperating and nondangerous; in addition, who was not read his rights.

172. HOBBS' use of excessive force, while the BYSTANDER OFFICERS watched, was unreasonable under the circumstances, especially PLAINTIFF was unarmed with his hands up and nothing in his hands.

173. HOBBS and the BYSTANDER OFFICERS' actions thus deprived PLAINTIFF of his right to be free from unreasonable searches and seizures under the Fourth Amendment and Fourteenth Amendment.

174. PLAINTIFF was detained without probable cause.  At the time of the shooting, PLAINTIFF did not pose a threat or serious bodily injury to the officers or others and PLAINTIFF never verbally threatened anyone prior to the shooting.

175. HOBBS and the BYSTANDER OFFICERS, acting within the course and scope of his duties, interfered with or attempted to interfere with the rights of PLAINTIFF to be free from unreasonable searches and seizures, to equal protection of the laws, and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercion, or intimidation. PLAINTIFF, an African-American male, was also racially profiled by HOBBS and the other HEMET PD officer, aka BYSTANDER OFFICER.

176. The conduct of DEFENDANTS and BYSTANDER OFFICERS was a substantial factor in causing the harms, losses, injuries, and damages of PLAINTIFF.

177. The conduct of DEFENDANTS and BYSTANDER OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of PLAINTIFF entitling PLAINTIFF to an award of exemplary and punitive damages.

178. DEFENDANTS and the BYSTANDER OFFICERS had actual, subjective awareness of the risk involved in the above-described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of PLAINTIFF.

179. As a direct and proximate result of DEFENDANTS and the BYSTANDER OFFICERS' conduct, PLAINTIFF has suffered and continues to suffer substantial past and future damages, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

180. PLAINTIFF is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

## PUNITIVE DAMAGES
### (Against HOBBS and BYSTANDERS)

181.  As a consequence of DEFENDANTS and the BYSTANDER OFFICERS' wrongful conduct, as set forth herein, constitutes malicious conduct involving the denial of PLAINTIFF's protected Civil Rights against illegal detention, unjustified excess force, and lack of immediate medical attention after being shot HOBBS, *inter alia*, while DEFENDANTS and the BYSTANDER OFFICERS were acting under color of law.

182.  DEFENDANTS and BYSTANDER OFFICERS are liable and PLAINTIFF is entitled to punitive damages, which PLAINTIFF seeks judgment of this Court.

183.  PLAINTIFF damages are a result of intentional, malicious, reckless, oppressive, and/or fraudulent actions directly perpetrated by the DEFENDANTS and the BYSTANDER OFFICERS and/or actions imputed to HOBBS, the other HEMET PD Officer, and BYSTANDER OFFICERS through their training and custom.

184.  PLAINTIFF intends to show that the factors the jury may consider in determining the amount(s) of punitive damages, which should be awarded include:

      a.  The nature of the wrong committed by DEFENDANTS;

      b.  The character of DEFENDANTS' conduct;

      c.  The degree of culpability of DEFENDANTS;

      d.  The situation and sensibilities of the parties concerned; and

      e.  The extent to which DEFENDANTS' conduct offends a public sense of justice and propriety.

1

2

## **PRAYER FOR RELIEF**

3    **WHEREFORE**, PLAINTIFF respectfully prays for judgment against

4    DEFENDANTS, jointly and severally, as follows:

5        1.  Non-Economic Damages:  $1,000,000.00;

6        2.  For Punitive Damages in the amount of $9,000,000.00; or

7        3.  For Treble damages;

8        4.  For pre-Judgment and post-judgment interest as permitted by law;

9        5.  For Attorney's Fees and Costs of this action; and

10       6.  Such further or additional relief as the Court deems proper.

11

12

## **JURY DEMAND**

13    PLAINTIFF demands a trial by jury on all claims so triable.

14

Dated:  December 18, 2024                Respectfully submitted,

15

16                                        **BOND LAW LEGAL GROUP**

17

18    By:_____

19            Royal Bond, Esq.,

20            Attorney for PLAINTIFF

21

22

23

24

25

26

27

28

## **VERIFICATION**

I, KEIRON HELMS, am the PLAINTIFF in the above-entitled matter. I have read the foregoing VERIFIED CIVIL COMPLAINT FOR DAMAGES and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true and correct.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on <u>December 18, 2024</u>, at <u>Menifee</u>, California.


By:   <u>/s/Keiron Helms</u>
Keiron Helms,
PLAINTIFF